**04-61198**

In The United States District Court
For The Southern District Of Florida
Miami Division

**CIV-LENARD**

Case No.: ~~00-6384~~-CR

MAGISTRATE JUDGE
WHITE

David I. Altman,
Petitioner,

v.

UNITED STATES OF AMERICA,
Respondent.



FILED by _____ D.C.
INTAKE

SEP 1 5 2004

CLARENCE MADDOX
CLERK U. S. DIST· CT.
S.D. OF FLA. MIAMI

——————————————————

**Motion For Immediate Declatory Relief**

——————————————————

David I. Altman
Reg. No. 55477-004  Durham-B
Low Security Correctional Institution
P.O. Box 999
Butner, NC 27509-0999

# Table Of Contents

Table Of Authorities ................................................................................................................ ii

I. Introduction .................................................................................................................. 1

II. Jurisdiction ................................................................................................................... 2

III. Authority ...................................................................................................................... 5

IV. Standing And Ripeness ................................................................................................ 6

V. Abstention .................................................................................................................... 8

VI. Exhaustion Of Remedies ........................................................................................... 10

VII. Ambiguity In The Instant Case ................................................................................ 12

    A. Ambiguity Defined ............................................................................................ 12

    B. Statutory Construction ....................................................................................... 13

    C. Ambiguity Of The Term "Visual Depictions" ................................................. 13

    D. "Visual" v. "Virtual" ....................................................................................... 15

    E. Precision In The law .......................................................................................... 15

    F. Ambiguity's Effect On The law ........................................................................ 16

VIII. The Rule Of Lenity ................................................................................................... 17

IX. Relief Sought ............................................................................................................. 18

X. Conclusion ................................................................................................................. 20

## Table Of Authorities

### Cases

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 41, 81 L.Ed. 617,

    57 S.Ct. 461 (1937)...................................................................................................4

*Allen v. United States*, 634 F.2d 316, 317 (5th Cir. 1981)......................................................1

*Aptheker v. Secretary of State*, 378 U.S. 500, 514, 12 L.Ed.2d 992,

    84 S.Ct. 1659, 1668 (1964)....................................................................................15

*Ashcroft v. Free Speech Coalition*, 525 U.S. 234, 152 L.Ed.2d 403,

    122 S.Ct. 1389 (2002)....................................................................................2, 14, 15

*Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 60 L.Ed.2d 895,

    99 S.Ct. 2301 (1979)...............................................................................................3

*Baggett v. Bullitt*, 377 U.S. 360, 378, 12 L.Ed.2d 377,

    84 S.Ct. 1316 (1964)...............................................................................................9

*Bailey v. United States*, 516 U.S. 137, 144, 133 L.Ed.2d 472,

    116 S.Ct. 501 (1995).............................................................................................13

*Baker v. Carr*, 369 U.S. 186, 204, 7 L.Ed.2d 663,

    82 S.Ct. 691 (1962)............................................................................................6, 7

*Bell v. Hood*, 327 U.S. 678, 90 L.Ed. 939,

    66 S.Ct. 773 (1946)........................................................................................*passim*

*Bifulco v. United States*, 447 U.S. 381, 387, 65 L.Ed.2d 205,

    100 S.Ct. 2247 (1980)...........................................................................................17

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397, 29 L. Ed. 2d 619,

    91 S. Ct. 1999 (1971)............................................................................................10

*Board of Comm'rs v. Seber*, 318 U.S. 705, 713, 87 L.Ed. 109,

    63 S.Ct. 20 (1943)................................................................................................16

*Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990)............................................................11

_Buckley v. Valeo_, 424 U.S. 1, 12, 46 L.Ed.2d 659,

　　96 S.Ct. 612 (1976)..................................................................................................4

_Chapman v. United States_, 500 U.S. 453, 114 L.Ed.2d 524,

　　111 S.Ct. 1919, 1926 (1991)....................................................................................15

_Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc._, 467 U.S. 837, 842-43, 81 L.Ed.2d 694,

　　104 S.Ct. 2778 (1984)..............................................................................................20

_City of Kenosha v. Bruno_, 412 U.S. 507, 514, 37 L.Ed.2d 109,

　　93 S.Ct. 2222 (1973)................................................................................................2

_Colorado River Water Conservation Dist. v. United States_, 424 U.S. 800, 813, 47 L.Ed.2d 483,

　　96 S.Ct. 1236 (1976)................................................................................................9

_Consumers Union of U.S. v. Walker_, 145 F.3d (D.C. Cir. 1994)........................................17

_Cort v. Ash_, 422 U.S. 66, 78, 45 L.Ed.2d 26, 36,

　　95 S.Ct. 2080, 2088 (1975)......................................................................................8

_County of Allegheny v. Frank Mashuda Co._, 360 U.S. 185, 188-189, 3 L.Ed.2d 1163,

　　79 S.Ct. 1060 (1959)................................................................................................9

_Currin v. Wallace_, 306 U.S. 1, 83 L.Ed. 441,

　　59 S.Ct. 379 (1939)................................................................................................18

_Davis v. Passman_, 442 U.S. 228, 248, 60 L.Ed.2d 846,

　　99 S.Ct. 2264 (1979)..............................................................................................5, 6

_Diaz v. United States_, 930 F.2d 832, 834 (11th Cir. 1991)..............................................1

_Downey v. Crabtree_, 923 F.Supp. 164, 165 (D. Or. 1996)................................................12

_Downs-Morgan v. United States_, 765 F.2d 1534, 1536 (11th Cir. 1985)..............................1

_Flast v. Cohen_, 392 U.S. 83, 20 L.Ed.2d 947,

　　88 S.Ct. 1942 1968)..............................................................................................6, 7

_Gobles v. Hayes_, 194 Ga. 297, 21 S.E.2d 624 (1942) ....................................................5

_Granville v. United States_, 613 F.2d 125, 126 n. 1 (5th Cir. 1980)....................................1

*Greene v. United States*, 376 U.S. 149, 11 L.Ed.2d 576,

 84 S.Ct. 615 (1964) ......................................................................................... 11

*High Ol' Times, Inc. v. Busbee*, 621 F.2d 135 (5th Cir. 1980) ................................. 9

*In RE Griffith*, 206 F.3d 1389, 1393-94 (11th Cir. 2000) ....................................... 15

*Kraney v. Halsey*, 82 Cal. 209, 22 P. 1137 ............................................................ 12

*Lanzetta v. New Jersey*, 306 U.S. 451, 453, 83 L.Ed. 888,

 59 S.Ct. 518 (1939) ....................................................................................... 17

*Lauf v. James*, 33 Conn.App. 223, 635 A.2d 300 ..................................................... 4

*Leedom v. Kyne*, 358 U.S. 184, 3 L.Ed.2d 210,

 79 S.Ct. 180 (1958) ....................................................................................... 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 119 L.Ed.2d 351,

 112 S.Ct. 2130 (1992) ...................................................................................... 6

*Lynch v. United States*, 292 U.S. 571, 78 L.Ed. 1434,

 54 S.Ct. 840 (1934) ......................................................................................... 9

*Marbury v. Madison*, 1 Cranch 137, 163 (1803) ...................................................... 5

*McCarthy v. Madigan*, 503 U.S. 140, 144, 117 L.Ed.2d 291,

 112 S.Ct. 1081, 1086 (1992) ........................................................................... 11

*McKart v. United States*, 395 U.S. 185, 194-95, 23 L.Ed.2d 194,

 89 S.Ct. 1657 (1969) ....................................................................................... 10

*Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 92 L.Ed.2d 650,

 106 S.Ct. 3229 (1986) ....................................................................................... 2

*Moskal v. United States*, 498 U.S. 103, 112 L.Ed.2d 449,

 111 S.Ct. 461, 465 (1990) ............................................................................... 15

*New York v. Ferber*, 458 U.S. 747, 73 L.Ed.2d 1113,

 102 S.Ct. 3348 (1982) ..................................................................................... 14

*Northern Cheyenne Tribe v. Hollowbreast*, 425 U.S. 649, 655 n. 7, 48 L.Ed.2d 274,

 96 S.Ct. 1793 (1976) ....................................................................................... 16

*Parker v. Levy*, 417 U.S. 733, 41 L.Ed.2d 439,

    94 S.Ct. 2547 (1974)..................................................................................................19

*Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 54, 95 L.Ed.2d 39,

    107 S.Ct. 1549 (1987)................................................................................................13

*Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 844, 120 L.Ed.2d 674,

    112 S.Ct. 2791 (1992)................................................................................................15

*Propper v. Clark*, 337 U.S. 472, 492, 92 L.Ed. 1480,

    69 S.Ct. 1333 (1949)....................................................................................................8

*Regional Rail Reorganization Cases*, 419 U.S. 102, 42 L.Ed.2d 320,

    95 S.Ct. 335 (1974)......................................................................................................7

*Robb v. Connolly*, 111 U.S. 624, 637, 551, 28 L.Ed. 542,

    4 S.Ct. 544 (1884)........................................................................................................8

*Schweiker v. Chilicky*, 487 U.S. 412, 420, 101 L.Ed.2d 370,

    108 S.Ct. 2460 (1988)..................................................................................................2

*Smith v. United States*, 508 U.S. 223, 124 L.Ed.2d 138,

    113 S.Ct. 2050 (1993)................................................................................................17

*Sorenson v. Secretary of the Treasury*, 475 U.S. 851, 860, 89 L.Ed.2d 855,

    106 S.Ct. 1600 (1986)................................................................................................13

*Staples v. United States*, 511 U.S. 600, 619 n. 1, 128 L.Ed.2d 608,

    114 S.Ct. 1793 (1994)................................................................................................17

*Starin v. New York*, 115 U.S. 248, 257, 29 L.Ed. 388,

    5 S.Ct. 28 (1885)..........................................................................................................4

*Steffel v. Thompson*, 415 U.S. 452, 473-3, 39 L.Ed.2d 505,

    94 S.Ct. 1209, 1222 (1974)........................................................................................11

*The Presbyterian Church v. United States*, 870 F.2d 518, 524 (9th Cir. 1989).................................4

*United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371, 98 L.Ed.2d 740,

    108 S.Ct. 626 (1988)..................................................................................................13

_United States ex rel. Attorney General v. Delaware & Hudson Co._, 213 U.S. 366, 53 L.Ed. 836,

    29 S.Ct. 527 (1909) ................................................................................................17

_United States v. Bass_, 404 U.S. 336, 347, 30 L.Ed.2d 488,

    92 S.Ct. 515 (1971) .................................................................................................17

_United States v. Cardiff_, 344 U.S. 174, 176, 97 L.Ed. 200,

    73 S.Ct. 189 (1952) .................................................................................................16

_United States v. Cespedes_, 151 F.3d 1329, 1331 (11th Cir. 1998) ...........................................5

_United States v. Fisher_, 6 U.S., 2 L.Ed. 304, 2 Cranch 358, 386 (1805) ...................................17

_United States v. Jones_, 529 U.S. 848, 146 L.Ed.2d 902,

    120 S.Ct. 1904 (2000) .............................................................................................17

_United States v. Mena_, 863 F.2d 1622, 1627 (11th Cir. 1989) ...............................................16

_United States v. Morton_, 467 U.S. 882, 828, 81 L.Ed.2d 680,

    104 S.Ct. 2769, 2773 (1984) .....................................................................................4

_United States v. Raines_, 362 U.S. 17, 4 L.Ed.2d 524,

    80 S.Ct. 519 (1960) .................................................................................................19

_United States v. Richardson_, 304 F.3d 1061 (11th Cir. 2002) ...............................................14

_Valley Forge Christian College v. Americans United for Separation of Church and State, Inc._,

    454 U.S. 464, 70 L.Ed.2d 700, 102 S.Ct. 752 (1982) .........................................................3

_Walker v. Southern Railway Co._, 385 U.S. 196, 17 L.Ed.2d 294,

    87 S.Ct. 365 (1966) .................................................................................................11

_Younger v. Harris_, 401 U.S. 37, 52, 27 L.Ed.2d 669,

    91 S.Ct. 746 (1971) ..................................................................................................5

_Zwickler v. Koota_, 389 U.S. 241, 19 L.Ed.2d 444,

    88 S.Ct. 391 (1967) ...............................................................................................8, 9

## Statutes

18 U.S.C. §2252 ..................................................................................................................... 1, 3

18 U.S.C. §2256 ..................................................................................................................... *passim*

28 U.S.C. §1331 ..................................................................................................................... *passim*

28 U.S.C. §1343(a)(3) ........................................................................................................... 1, 2, 3, 11

28 U.S.C. §1343(a)(4) ........................................................................................................... 1, 2, 3, 11

28 U.S.C. §2201 ..................................................................................................................... 1, 2, 5, 11

28 U.S.C. §2255 ..................................................................................................................... 1

42 U.S.C. §1983 ..................................................................................................................... 10

## Other Authorities

*20 Am.Jur.2d* COURTS §54 ................................................................................................. 4

*21A Am.Jur.2d* CRIMINAL LAW §927 ............................................................................... 5

*A Matter of Interpretation: Federal Courts and the Law* (A. Scalia, Ed., 1997) ................. 17

*Ballentine's Law Dictionary*, Third Edition (1969) ............................................................. 12

*Black's Law Dictionary*, Seventh Edition (1999) ................................................................ 12

*Common-Law Courts in a Civil Law System*, at 29 ............................................................. 17

*Data Processing Service v. Camp*, 397 U.S. 150, 152-3, 25 L.Ed.2d 184,

      90 S.Ct. 827 (1970) ...................................................................................................... 7

*Draft Reclassifications for Political Demonstrators --*

      *Jurisdictional Amounts in Suits Against Federal Officers*, 53 Corn. L.Q. 916, 926-929 (1968) ........ 18

*Hearings on H.R. 5623*, 70th Cong., 1st Sess., 19 at 75-76 (1928) .................................... 18

Hill, *Constitutional Remedies*, 69 Col. L. Rev. 1109, 1133 (1969) .................................... 19

Jaffin, *Federal Procedural Revision*, 21 Va. L. Rev. 504, 525-26 (1935) .......................... 19

James Madison, *1 Annals of Cong.* 439 (1789) .................................................................. 19

*Judiciary Act of March 3, 1875*, §1, 18 Stat. 470 ............................................................... 2

L. Brilmayer, *"The Jurisprudence of Article III,"* 93 Harv. L. Rev. 297, 298-99 (1979) .... 6

L. Carroll, *Through the Looking Glass & What Alice Found There* 124,

    reprinted in *Journeys in Wonderland* (Derrydale 1979) ................................................ 16

P.S. 1330.13 §7(a) ........................................................................................................ 12

Representative Bingham, *Globe App.* 81 .......................................................................... 19

Rupert Cross, *Statutory Interpretation* 76-77 (1976) ...................................................... 16

*S. Rep. No.* 104-358, at 2 (1996) .................................................................................. 14

*Webster's II New Riverside University Dictionary* (1994) ................................................ 12

## <u>Constitutional Provisions</u>

Fifth Amendment .................................................................................................... 2, 4, 18, 19

Fourteenth Amendment ............................................................................................ 2, 4, 18, 19

U.S. Constitution, Article III, §1, Clause 2 ........................................................................ 2, 18

**In The United States District Court**
**For The Southern District Of Florida**
**Miami Division**

David I. Altman,
      Petitioner,

v.                       Case No. 00-6384-CR

UNITED STATES OF AMERICA,
      Respondent.

---

### Motion For Immediate Declatory Relief

**COMES NOW** the Petitioner, David I. Altman, PRO SE, before this Honorable Court, and presents his Motion For Immediate Declatory Relief, pursuant to 28 U.S.C. §§1331, 1343(a)(3), 1343(a)(4), and 2201.

# I. Introduction

The Petitioner was Indicted and convicted of a crime under 18 U.S.C. §2252A. However, this statute, as well as the statute defining the terms used therein, 18 U.S.C. §2256, are unconstitutionally ambiguous, and therefore, the Petitioner's conviction must be vacated and his criminal record expunged.

Under well-settled principles of law, *pro se* applications for post-conviction relief are to be liberally construed. See, *e.g.*, *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991); *Allen v. United States*, 634 F.2d 316, 317 (5th Cir. 1981). The courts have held that pleadings erroneously styled as *coram nobis* Petitions should be treated as §2255 Motions, and vice versa. See *Downs-Morgan v. United States*, 765 F.2d 1534, 1536 (11th Cir. 1985) (construing *coram nobis* petition as §2255 Motion); *Granville v. United States*, 613 F.2d 125, 126 n. 1 (5th Cir. 1980) (construing §2255 motion as *coram nobis* Petition). Under this principle, the Petitioner states, for the record, that the Instant Motion is ***not*** brought pursuant to 28 U.S.C. §2255, nor should it erroneously be construed as such. Instead, the Instant Motion is brought pursuant to 28 U.S.C. §1331.

As a matter of procedural history, the courts have long upheld the constitutionality of §2256. This changed when the Supreme Court handed down its decision in the case of *Ashcroft v. Free Speech Coalition*, 525 U.S. 234, 152 L.Ed.2d 403122 S.Ct. 1389 (2002). In that case, the Supreme Court declared a portion of 18 U.S.C. §2256 to be unconstitutional, as it contained the phrases "appears to be" and "conveys the impression," referring to "virtual" child pornography, which was protected speech under the First Amendment. The offending phrases were stricken from the statute.

The court in the Instant Case will no doubt maintain that §2256 is currently constitutional as written. However, the Petitioner asserts that the patent ambiguity of the term "visual depictions" found throughout §2256 and the statutes it defines shows that this cannot be so. An ambiguous term is automatically violative of the Due Process Clause of the Fifth and Fourteenth Amendments. The Petitioner contends that the term "visual depictions" is ambiguous, and that the existence of this term in the statutes is an affront to the Constitution. This establishes a 'real and substantial' case or controversy. The Petitioner avers that the term "visual depictions" is unconstitutionally ambiguous, in violation of the Due Process Clause of the Fifth and Fourteenth Amendments, and that consequently, his conviction must be vacated.

## II. **Jurisdiction**

The federal judicial power extends to all cases, in law and equity, arising under the Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority. U.S. Constitution, Article III, §1, Clause 2. Since 1875, Congress has provided the federal trial courts with general jurisdiction over such cases. See *Judiciary Act of March 3, 1875*, §1, 18 Stat. 470; *Schweiker v. Chilicky*, 487 U.S. 412, 420, 101 L.Ed.2d 370, 108 S.Ct. 2460 (1988). Additionally, jurisdiction under 28 U.S.C. §1331 exists for actions brought directly under the Constitution. See, *e.g.*, *City of Kenosha v. Bruno*, 412 U.S. 507, 514, 37 L.Ed.2d 109, 93 S.Ct. 2222 (1973).

To invoke federal jurisdiction under Section 1331, a Plaintiff's claim must be based on some federal law independent of that statute. *Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 92 L.Ed.2d 650, 106 S.Ct. 3229 (1986). In the Instant Case, the Petitioner is basing his claim on 28 U.S.C. §1343(a)(3), 28 U.S.C. §1343(a)(4), and 28 U.S.C. §2201.

The Petitioner avers that he has the ability under the law to have the court review his claim, as the Instant Motion is a civil action authorized by law pursuant to 28 U.S.C. §1343(a)(3), which states in relevant part:

> The District courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person to redress the deprivation … of any right, privilege or immunity secured by the Constitution of the United States.

The Petitioner also has the ability under the law to have the court grant him the relief he is requesting, which is vacating his conviction and expunging his criminal record pursuant to 28 U.S.C. §1343(a)(4), which states in relevant part, that the Petitioner can:

> …secure equitable or other relief under any Act of Congress providing for the protection of Civil rights, including the right to vote.

As early as 1946 the Supreme Court decided that federal question jurisdiction exists for claims urging a cause of action based directly on the Constitution. *Bell v. Hood*, 327 U.S. 678, 90 L.Ed. 939, 66 S.Ct. 773 (1946). As did the Plaintiff in *Bell*, the Petitioner seeks recovery "squarely on the ground" that specific constitutional guarantees have been violated. *Id.* at 681, 66 S.Ct. 773. The District Court has jurisdiction if "the right of Petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another." *Bell, supra*.

As will be seen below, the construction of the statutes in question – 18 U.S.C. §2252, 18 U.S.C. §2252A and 18 U.S.C. §2256 all contain an ambiguous phrase, which, pursuant to *Bell*'s precedent, establishes that the Petitioner can indeed recover under his complaint, as the statute, given one construction, refers to illegal conduct, and given another, refers to legal conduct, thus defeating the statute. To establish that a facial challenge to a governmental act presents a real and substantial controversy, a Plaintiff must show he has sustained a direct injury as the result of that act. See *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 60 L.Ed.2d 895, 99 S.Ct. 2301 (1979).

It has been held that a federal court may not hear a legal claim unless it arises from a genuine case or controversy. A case or controversy requires a Plaintiff with a personal stake in the outcome sufficient to assure an adversarial presentation of the case. Hence, a Plaintiff must demonstrate that he or she has suffered an actual or threatened injury caused by the challenged conduct of the Defendant. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 70 L.Ed.2d 700, 102 S.Ct. 752 (1982).

3

In the Instant Case, the actual injury caused to the Petitioner is his conviction under these unconstitutional statutes, which conviction exists in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution.    Thus, the Petitioner has a significant personal stake in the outcome of these proceedings.    A "sufficient 'personal stake' in a determination of the constitutional validity [of the statutes in question is necessary] to present 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character.'" *Buckley v. Valeo*, 424 U.S. 1, 12, 46 L.Ed.2d 659, 96 S.Ct. 612 (1976), quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 41, 81 L.Ed. 617, 57 S.Ct. 461 (1937).    There is indeed a 'real and substantial' controversy in the case here.

The Petitioner asserts that this court has jurisdiction over the Instant Case, because the Petitioner is stating a claim which arises under the Constitution, in that he avers that his Fifth and Fourteenth Amendments rights to Due Process of law have been abrogated.    The Petitioner's complaint thus meets the requirement of "arising under" the Constitution as required by 28 U.S.C. §1331. See, *e.g.*, *The Presbyterian Church v. United States*, 870 F.2d 518, 524 (9th Cir. 1989) (holding that the court had jurisdiction over a claim for declatory relief because the Plaintiff alleged a violation of the First and Fourth Amendments).

To bring a case within the removal statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the Plaintiff's cause of action.    *Starin v. New York*, 115 U.S. 248, 257, 29 L.Ed. 388, 5 S.Ct. 28 (1885).    The alleged constitutional infirmities in the Instant Case are not immaterial, but form rather the sole basis of the relief sought. ... 'the complaint states strong cases, and if the allegations have any foundation in truth, the Plaintiff's legal rights have been ruthlessly violated." *Bell, supra*.

Thus, pursuant to 28 U.S.C. §1331, this Honorable Court has jurisdiction.    There are three separate elements of the jurisdiction of a court:    (1).    Jurisdiction over the person; (2).    Jurisdiction over the subject matter; and (3). Jurisdiction to render the particular judgment sought. *Lauf v. James*, 33 Conn.App. 223, 635 A.2d 300, as cited in *20 Am.Jur.2d* **COURTS** §54.    Subject matter jurisdiction defines the court's authority to hear a given type of case. *United States v. Morton*, 467 U.S. 882, 823, 81 L.Ed.2d 680, 104 S.Ct. 2769, 2773 (1984).    Congress bestows that authority on lower courts by statute: in the Instant Case, the subject matter jurisdiction comes from 28 U.S.C. §1331.

This Honorable Court maintains all three of the aforementioned elements of jurisdiction. Additionally, a court of original jurisdiction (like the court in the Instant Case) has plenary power over its judgments during the term at which they were rendered. *Gobles v. Hayes*, 194 Ga. 297, 21 S.E.2d 624 (1942), as cited in *21A Am.Jur.2d* **CRIMINAL LAW** §927, that term being the Petitioner's term of incarceration, which is ongoing in the Instant Case.

## III. Authority

> Any court … may declare the rights of any interested party … whether or not further relief is or could be sought.
>
> 28 U.S.C. §2201.

In the Instant Case, the Petitioner is an interested party; the declatory relief he seeks is well-supported by case law handed down by the Supreme Court. Furthermore, the court reviews *de novo* the legal question of whether a statute is unconstitutional. *United States v. Cespedes*, 151 F.3d 1329, 1331 (11th Cir. 1998). "The power and duty of the judiciary to declare laws unconstitutional is in the final analysis derived from its responsibility for resolving concrete disputes brought before the courts for decision." *Younger v. Harris*, 401 U.S. 37, 52, 27 L.Ed.2d 669, 91 S.Ct. 746 (1971). Thus, the court has the authority to grant the relief the Petitioner seeks, and to vacate his conviction.

"The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection." *Marbury v. Madison*, 1 Cranch 137, 163 (1803). The Petitioner has clearly claimed his rights in the Instant Matter; persons (like the Petitioner) who have "no [other] effective means" of redress "must be able to invoke the existing jurisdiction of the courts for the protection of their justiciable constitutional rights." *Davis v. Passman*, 442 U.S. 228, 248, 60 L.Ed.2d 846, 99 S.Ct. 2264 (1979). Thus, the Petitioner looks to this Honorable Court for relief.

The inquiry and analysis of this type of claim is done on the basis of established law. "[It] is … well-settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for any such invasion, federal courts may use any available remedy to make good the wrong done." *Bell*, *supra*. In the Instant Case, the Petitioner seeks declatory relief, because such declatory relief is appropriate to the issue. When a person has been convicted of violating a statute which is, at the time of conviction unconstitutional, or later becomes unconstitutional, that person has been convicted in violation of their rights, and is due relief.

## IV. **Standing And Ripeness**

The Petitioner avers that justiciable constitutional rights – such as the Due Process of law – are to be enforced through the courts. And, unless such rights are to become merely precatory, the class of those litigants who allege that their own constitutional rights have been violated, and who at the same time have no effective means other than the judiciary to enforce these rights, must be able to invoke the existing jurisdiction of the courts for the protection of their justiciable constitutional rights. *Davis*, *supra*.

The 'gist of the question of standing' is whether the party seeking relief has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Flast v. Cohen*, 392 U.S. 83, 20 L.Ed.2d 947, 88 S.Ct. 1942 1968) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 7 L.Ed.2d 663, 82 S.Ct. 691 (1962)). To satisfy the first element, a Plaintiff must allege that he has suffered the invasion of a "legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 119 L.Ed.2d 351, 112 S.Ct. 2130 (1992), which must "affect the Plaintiff in a personal and individual way." *Id.* at 561, and must be "legally and judicially cognizable." *Id.*

In the Instant Case, the Petitioner has a highly personal stake in the outcome of the controversy – the vacation of his criminal conviction. Additionally, the 'legally protected interest' which was violated concretely in this case is the Petitioner's right to the Due Process of law. This violation is actual, as the Petitioner stands convicted of an unconstitutional statue. This violation affects the Petitioner in every way. Such an injury is indeed legally and judicially cognizable, as there are an abundance of cases where people attacked the validity and/or constitutionality of statutes, and received the relief they sought.

Because both standing and ripeness analyses look to the existence of actual injury to the Plaintiff caused by the alleged wrong, they overlap to some degree and often collapse into each other. Standing may be distinguished from ripeness, however, because where standing is at issue, the question regarding the existence of an actual injury arises from the identity of the parties. See generally L. Brilmayer, *"The Jurisprudence of Article III,"* 93 Harv. L. Rev. 297, 298-99 (1979).

In testing the Petitioner's standing to assert the claims raised, the court must determine (1) whether the Petitioner has alleged that he has suffered an "injury in fact," and (2) "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statue or constitutional guarantee in question." _Data Processing Service v. Camp_, 397 U.S. 150, 152-3, 25 L.Ed.2d 184, 90 S.Ct. 827 (1970). It must be clear that there is a "logical nexus" between the Plaintiff's status and the substantive claims in testing the Plaintiff's standing. _Flast, supra_. As noted above, the Petitioner has already alleged that he has suffered an injury in fact – his criminal conviction. The statute under which the Petitioner has been convicted is unconstitutional; that is the Petitioner's claim. The Petitioner's status as a federal prisoner is directly affected by this fact. Therefore, this 'logical nexus' has been clearly established.

The question of the ripeness of the constitutional challenge raised by the Petitioner need not detain this Honorable Court long. To the extent that "issues of ripeness involve, at least in part, the existence of a live 'Case or Controversy,'" _Regional Rail Reorganization Cases_, 419 U.S. 102, 42 L.Ed.2d 320, 95 S.Ct. 335 (1974), the conclusion that the Petitioner will sustain immediate injury from the operation of the current conviction under an unconstitutional statute, and the recognition that such injury can only be redressed by the relief requested would appear to satisfy this requirement. The prudential considerations embodied in the ripeness doctrine also argue strongly for a prompt resolution of the claims presented.

Indeed, if the Petitioner is allowed to remain incarcerated after having been convicted under an unconstitutional statute, the injury he has already received – his criminal conviction – will only be compounded. This injury will be directly redressed by a favorable decision by this Honorable Court. As the Petitioner has made a clear showing of both jurisdiction and authority in the Instant Matter, and because the Petitioner clearly has standing to proceed and the issue is ripe for decision, the Petitioner urges this Honorable Court to decide on this matter expeditiously. The Petitioner has the requisite standing to challenge the laws, and the elements of justiciability required to maintain this action are present. See _Baker, supra_.

# V. **Abstention**

Courts have considered several factors in determining whether to imply a cause of action from a Statutory right: (1) whether the provision asserted creates an especial right in the plaintiff, (2) whether the action of Congress in the field indicates an intent to allow such a remedy or at least an intent not to deny the remedy, (3) whether implication of the remedy would be consistent with the purpose of the right asserted, and (4) whether the cause of action implied would be one appropriate for federal law. _Cort v. Ash_, 422 U.S. 66, 78, 45 L.Ed.2d 26, 36, 95 S.Ct. 2080, 2088 (1975).

In the Instant Case, the Petitioner has a right under 28 U.S.C. §1331 to bring a federal question at any time, especially in a case where there is a significant constitutional violation. Congress indeed intended for §1331 to permit a remedy; otherwise, the courts would not have been given jurisdiction to hear a federal question. The right asserted – the Due Process of law – is entirely consistent with the remedy the Petitioner is seeking. And lastly, the cause of action implied in this case – attacking the constitutionality of a federal criminal statute – is a cause of action which is appropriate under federal law.

Furthermore, it is clear that Congress imposed the duty upon all levels of the federal Judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of its federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, " ... to guard, enforce, and protect every right granted or secured by the Constitution of the United States ..." _Robb v. Connolly_, 111 U.S. 624, 637, 551, 28 L.Ed. 542, 4 S.Ct. 544 (1884).

"The Judge-made doctrine of abstention, first fashioned in 1941 ... sanctions such escape only in narrowly limited 'special circumstances.'" _Propper v. Clark_, 337 U.S. 472, 492, 92 L.Ed. 1480, 69 S.Ct. 1333 (1949), as cited in _Zwickler v. Koota_, 389 U.S. 241, 19 L.Ed.2d 444, 88 S.Ct. 391 (1967). Thus, declatory relief determining the disputed constitutional issue will ordinarily be appropriate to carry out the purposes of the Federal Declatory Judgment Act and to vindicate the great protections of the Constitution.

It must be stressed that "[abstention] from the exercise of federal jurisdiction is the exception, not the rule. 'The doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. . . .'" *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-189, 3 L.Ed.2d 1163, 79 S.Ct. 1060 (1959), as cited in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 47 L.Ed.2d 483, 96 S.Ct. 1236 (1976). Additionally, when "extensive adjudications, under the impact of a variety of factual situations, [would be required in order to bring a challenged statute] within the bounds of permissible constitutional certainty," abstention may be inappropriate. *Baggett v. Bullitt*, 377 U.S. 360, 378, 12 L.Ed.2d 377, 84 S.Ct. 1316 (1964).

Likewise, abstention is improper when the allegedly ambiguous statute "is obviously susceptible of a limiting construction." *High Ol' Times, Inc. v. Busbee*, 621 F.2d 135 (5th Cir. 1980). As §2256 has been modified before, by removal of the terms "appears to be" and "conveys the impression," it is clear that this statute is indeed susceptible of a limiting construction. The Petitioner, though, avers that he has serious doubts that a "saving construction exists which would eliminate the vagaries" of these statutes. *Id.*

If a statute contains unobjectionable provisions which can be separated from those found to be unconstitutional, and can be given legal effect standing alone, the provisions may be maintained as valid. See, *e.g.*, *Lynch v. United States*, 292 U.S. 571, 78 L.Ed. 1434, 54 S.Ct. 840 (1934). However, in the Instant Case, there is simply no means by which to save these statutes; removal of the offending term "visual depictions" would not make sense unless it was replaced with a non-ambiguous term. Likewise, leaving the term in place is equally offensive. Therefore, the Petitioner asserts that these statutes must be struck down in their entirety as facially unconstitutional due to patent ambiguity.

It follows that the District Court's views on the question of injunctive relief are irrelevant to the question of abstention here. A request for a declatory judgment that a statute is overbroad on its face must be considered independently of any request for injunctive relief against the enforcement of that statute. In other words, a Federal District Court has the duty to decide the appropriateness and the merits of the declatory request irrespective of its conclusion as to the propriety of the issuance of the injunction. *Zwickler*, *supra*.

The Petitioner maintains that it would thus be improper for this court to abstain from making a ruling in the Instant Matter, and that such should encompass and discuss each of the Petitioner's points at length.

## VI. <u>Exhaustion Of Remedies</u>

The judicially-created exhaustion requirement is intended to facilitate the development of a full factual record, to encourage the exercise of administrative expertise and discretion, and to promote judicial and administrative efficiency. See <u>McKart v. United States</u>, 395 U.S. 185, 194-95, 23 L.Ed.2d 194, 89 S.Ct. 1657 (1969). The doctrine is not an absolute bar to judicial consideration and where justification for invoking the doctrine is absent, application is unwarranted. <u>Id.</u>

The courts have identified two exceptions to the general rule of exhaustion. The first exception, derived from the Supreme Court's decision in <u>Leedom v. Kyne</u>, 358 U.S. 184, 3 L.Ed.2d 210, 79 S.Ct. 180 (1958), permits immediate judicial review of a challenge to Agency authority where the Agency's assertion of jurisdiction "would violate a clear right of a Petitioner by disregarding a specific and unambiguous Statutory, regulatory, or constitutional directive." The second exception permits immediate judicial review where postponement of review would cause the plaintiff irreparable injury. <u>Id.</u>

Actions pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 397, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971), however, are a creation of the judiciary, and are premised on the theory that victims of a constitutional violation by a federal agent have an implied right of action to recover damages against the official absent any statute conferring such a right. <u>Carlson v. Green</u>, 446 U.S. 14, 18, 64 L.Ed.2d 15, 100 S.Ct. 1468 (1980).

Because a prisoner asserting only a claim for damages under <u>Bivens</u> apparently can obtain no relief from the Bureau of Prisons, it would serve little purpose to require him to exhaust administrative remedies before coming into the courts. <u>McKart</u>, <u>supra</u>. However, the Petitioner is, at least to his knowledge, not filing suit pursuant to <u>Bivens</u>, <u>supra</u>, as there is no direct person which he is aware of against which a <u>Bivens</u> or a 42 U.S.C. §1983 claim might be brought in the Instant Matter.

The law is well-settled that resort to administrative remedies is not required where: (1) There is no adequate administrative remedy, _Greene v. United States_, 376 U.S. 149, 11 L.Ed.2d 576, 84 S.Ct. 615 (1964); (2) There are extensive administrative delays which render administrative remedies inadequate to help plaintiffs, _Walker v. Southern Railway Co._, 385 U.S. 196, 17 L.Ed.2d 294, 87 S.Ct. 365 (1966); and (3) There is a clear showing of irreparable injury, _Greene, supra_. As already shown above, there is no possibility in the Instant Case for administrative remedy, and the Petitioner's continued incarceration is undoubtedly an irreparable injury.

The Supreme Court has declared that "when federal claims are premised on 42 U.S.C. §1983 and 28 U.S.C. §1343() … we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights." _Steffel v. Thompson_, 415 U.S. 452, 473-3, 39 L.Ed.2d 505, 94 S.Ct. 1209. 1222 (1974). Likewise, in the Instant Case, where relief is based on 28 U.S.C. §1331, 28 U.S.C. §1343(a)(3), 28 U.S.C. §1343(a)(4) and 28 U.S.C. §2201, there is no remedy outside the District Court, and therefore exhaustion is moot.

Moreover, Congress did not include a requirement of exhaustion of remedies in the statute upon which this court's jurisdiction is based – 28 U.S.C. §1331. The absence of such a requirement leaves the court with the authority to reach the merits. _McCarthy v. Madigan_, 503 U.S. 140, 144, 117 L.Ed.2d 291, 112 S.Ct. 1081, 1086 (1992). Because there is no statutory bar, the court may, in its discretion, consider the merits of the Petitioner's claim. See, _e.g._, _Brown v. Rison_, 895 F.2d 533, 535 (9th Cir. 1990).

The Supreme Court has provided the following guidance on the balancing necessary in a case involving administrative remedies:

> [T]his court has declined to require exhaustion in some circumstances even where administrative and judicial interests would counsel otherwise. In determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion. "Administrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." … Application of this balancing principle is "intensely practical." because attention is directed to both the nature of the claim presented and the characteristics of the particular administrative procedure provided.

_McCarthy, supra_, at 146.

The Petitioner's side of the balance is extremely basic – the interest in freedom from incarceration, the vacating of his conviction, and the expungement of his criminal record. Under controlling precedent, the balances favor prisoners where exhaustion of administrative remedies would be futile or cause irreparable harm by delaying relief. *Downey v. Crabtree*, 923 F.Supp. 164, 165 (D. Or. 1996).

The irreparable injury exception highly favors the Petitioner for several reasons. First, and most obvious, should the Petitioner prevail in his claim, not only will his conviction be vacated, but he would secure immediate release from prison. Secondly, the review process is lengthy and the timing entirely under the Bureau of Prisons' control. As there are no provisions for expediting the review process except in emergencies that threaten the prisoner's immediate health or welfare, P.S. 1330.13 §7(a), the Petitioner contends that his situation falls squarely into both exceptions to the exhaustion doctrine, and that any exhaustion in the Instant Case is futile, and that requiring exhaustion is inappropriate in the Instant Case.

## VII. **Ambiguity In The Instant Case**

The Petitioner has established that this Honorable Court has jurisdiction under 28 U.S.C. §1331. The Petitioner also established that the court has the authority to hear said arguments under the law. The Petitioner, having further established that he has standing to challenge the statute under which he is convicted, and having shown that abstention is improper in this context, and that exhaustion of remedies is not required, therefore presents the following federal question:

- *Is 18 U.S.C. §2256 (and, by extension, 18 U.S.C. §2252A) unconstitutional due to the patent ambiguity of the term "visual depictions"?*

### A. **Ambiguity Defined**

Ambiguity is defined as an uncertainty of meaning or intention. *Black's law Dictionary*, Seventh Edition (1999); a doubtfulness or uncertainty, especially in the meaning of language arising from its admitting of more than one meaning; duplicity in meaning. *Kraney v. Halsey*, 82 Cal. 209, 22 P. 1137, as cited in *Ballentine's law Dictionary*, Third Edition (1969), and as being liable to more than one interpretation. *Webster's II New Riverside University Dictionary* (1994).

### B. **Statutory Construction**

"Statutory construction ... is a holistic endeavor.  A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme – because the same terminology is used elsewhere in a context that makes its meaning clear.  See, *e.g.*, *Sorenson v. Secretary of the Treasury*, 475 U.S. 851, 860, 89 L.Ed.2d 855, 106 S.Ct. 1600 (1986), or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law."  See, *e.g.*, *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 54, 95 L.Ed.2d 39, 107 S.Ct. 1549 (1987), as cited in *United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371, 98 L.Ed.2d 740, 108 S.Ct. 626 (1988).


The term at issue here – "visual depictions" – is ambiguous both in isolation and in its used contexts.  The remainder of the Statutory scheme is no aid in determining the meaning of the term, as the term ahs been consistently used in referring to both legal and illegal images.  The fact that one context is applicable to the intended purpose of the statute is of no import here, as the patent ambiguity still persists.


The primary test in the statutes attacked herein relates to a corruption of the public morals or an outrage of the sense of public decency.  Such standards as are written into these statutes do not convey a warning of what conduct is prohibited with sufficient definition, and the term at issue here – "visual depictions" – may be unconstitutionally applied to both protected and illegal conduct, including speech.


### C. **Ambiguity Of The Term "Visual Depictions"**

It has been held that any word or phrase in a statute "must be given its 'ordinary or natural' meaning." *Bailey v. United States*, 516 U.S. 137, 144, 133 L.Ed.2d 472, 116 S.Ct. 501 (1995).  However, the term in question in the Instant Case – "visual depictions" – has two distinct and contradictory 'ordinary or natural' meanings, and thus is patently ambiguous.  "Visual depiction" has been defined as follows:

> ...undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image.
> 18 U.S.C. §2256(5)

13

In the Instant Case, the statute the Petitioner was convicted of – 18 U.S.C. §2252A – declares that the possession, transportation or distribution of "child pornography" has been proscribed. "Child pornography" has been defined as:

> ...any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct.
>
> 18 U.S.C. §2256(8)(A)

Thus, it is clear that the term "child pornography" refers to "visual depictions" thereof, and, as the term "visual depictions" is ambiguous, so then is the term "child pornography." The term "visual depictions" is ambiguous because it is susceptible of two distinct and contradictory definitions. The first definition is that which describes illegal conduct, that conduct which is rightly repudiated and which is proscribable, as shown in these two examples:

> Child pornography has been defined generally as works that *visually depict* sexual conduct by children below a specified age. *New York v. Ferber*, 458 U.S. 747, 73 L.Ed.2d 1113, 102 S.Ct. 3348 (1982) (Emphasis added).

> We have examined the images shown to the jury. The children *depicted* in those images were real. Of that we have no doubt whatsoever. *United States v. Richardson*, 304 F.3d 1061 (11th Cir. 2002) (Emphasis added).

However, the term "visual depictions" is *__also__* capable of another equally valid construction – that definition which describes legal conduct, which is not proscribable, as shown in these two examples:

> A provision of the Child Pornography Prevention Act of 1996 (CPPA) 18 USCS §2256(8)(B) which prohibits any *visual depiction* that *appears to be* of a minor engaging in sexually explicit conduct ... sometimes called "virtual child pornography" ... is overbroad and violates the Free Speech guarantee of the Federal Constitution. *Ashcroft, supra*.

> Computers and computer imaging technology can be used to "[1] produce . . . *visual depictions* of what *appear to be* children engaging in sexually explicit conduct." *S. Rep. No.* 104-358, at 2 (1996).

There are many examples of term "visual depictions" being used to refer to those images which were made using actual child actors. These images themselves are rightly repudiated by those in society of good moral character – such as the Petitioner. It seems, though, that there are just as many examples of the term "visual depictions" being used to refer to "virtual" child pornography, which is repudiated by some – perhaps rightly so – but cannot be proscribed pursuant to the decision in *Ashcroft*. This, then, is a clear showing of the two distinct and contradictory constructions of this term, and thus an undeniable showing of ambiguity.

14

### D. "Visual" v. "Virtual"

The Petitioner's argument is *not* one of contesting whether the images in his possession were "actual" or "virtual" images, as the Instant Motion is not the proper forum for such an argument. The Petitioner's argument is rather that the term "visual depictions" is patently ambiguous.

It is well-recognized that among canons of Statutory interpretation, courts should avoid interpreting statutes such as to render language in the statute superfluous. *In RE Griffith*, 206 F.3d 1389, 1393-94 (11th Cir. 2000). In the case at bar, the statutes *could* be read to prohibit "virtual" images which were not created using real children. This, of course, is a preposterous and impossible reading of the language of the statute, as the Supreme Court, in *Ashcroft*, *supra*, made it abundantly clear that this type of "visual depictions" – these "virtual" images – could *not* be proscribed. even so, this reading of the statutes is inherent in one of the commonly used and acceptable meanings of the term "visual depictions." The court cannot say that the term "visual depictions" *never* refers to "virtual" images, as that would negate the true meaning of the term and undermine the language used by both Congress and the Supreme Court, both of whom have used the term "visual depictions" to refer to these "virtual" images.

The critical question, though, is what degree of ambiguousness is necessary in any particular case to comprise ambiguity. *Moskal v. United States*, 498 U.S. 103, 112 L.Ed.2d 449, 111 S.Ct. 461, 465 (1990). In the Instant Case, there is a "grievous ambiguity or uncertainty in the language and structure" of the statute. *Chapman v. United States*, 500 U.S. 453, 114 L.Ed.2d 524, 111 S.Ct. 1919, 1926 (1991). This is far beyond the ambiguity needed to comprise an ambiguity sufficient to undermine a federal criminal statute.

### E. Precision In The law

Furthermore, it is clear that precision must be the touchstone of legislation affecting the liberty guaranteed in the Fifth Amendment, *Aptheker v. Secretary of State*, 378 U.S. 500, 514, 12 L.Ed.2d 992, 84 S.Ct. 1659, 1668 (1964), because liberty finds no refuge in a jurisprudence of doubt. *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 844, 120 L.Ed.2d 674, 112 S.Ct. 2791 (1992).

15

Finally, in construing this "admittedly ambiguous" statute, _Board of Comm'rs v. Seber_, 318 U.S. 705, 713, 87 L.Ed. 109, 63 S.Ct. 20 (1943), the court must be guided by that "eminently sound and vital canon," _Northern Cheyenne Tribe v. Hollowbreast_, 425 U.S. 649, 655 n. 7, 48 L.Ed.2d 274, 96 S.Ct. 1793 (1976) – in the Instant Case, the canon of the Rule of Lenity, as discussed below. There is simply no law or procedure under the Constitution which could condone a conviction under an ambiguous – and unconstitutional – statute.

### F. **Ambiguity's Effect On The law**

"If, in a particular context, words convey to different judges a different range of meanings 'derived from, not fanciful speculations or mistakes about linguistic usage, but from true knowledge about the use of words, they are ambiguous." Rupert Cross, _Statutory Interpretation_ 76-77 (1976). The Petitioner has already demonstrated that the term "visual depictions" conveys to different Judges different meanings. Even Congress used the term "visual depictions" to refer to images which are now legal, as opposed to those which are not.

It has been has been held that "Words which are vague and fluid . . . may be as much of a trap for the innocent as the ancient laws of Caligula." _United States v. Cardiff_, 344 U.S. 174, 176, 97 L.Ed. 200, 73 S.Ct. 189 (1952). Humpty Dumpty stated it best when he said, "when I use a word ... it means neither more nor less." L. Carroll, _Through the Looking Glass & What Alice Found There_ 124, reprinted in _Journeys in Wonderland_ (Derrydale 1979). Because the definition of the term "visual depictions" has two distinct and contradictory meanings, it is therefore patently ambiguous. Likewise, the term is vague and fluid, and thus the statutory ambiguity in the Instant Case must be resolved in favor of the criminal defendant. _Bell, supra_.

The Petitioner must demonstrate that there are "no set of circumstances under which the Act would be valid." _United States v. Mena_, 863 F.2d 1622, 1627 (11th Cir. 1989). There is no way to save these statues; judicially rewriting them is utterly impossible, and removing the term "visual depictions" from the statutes would make them nonsensical. The only answer is to declare all of these statutes unconstitutional, and to strike them down.

It is clear that a term cannot refer to ~~both~~ legal and illegal conduct simultaneously, as it does in the Instant Case, as no person may be required at "peril of life, liberty or property to speculate as to the meaning of penal statutes." *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 83 L.Ed. 888, 59 S.Ct. 518 (1939). It has also been held that if there is no way of harmonizing a statue with the Constitution, then the statute must fall. *Consumers Union of U.S. v. Walker*, 145 F.3d (D.C. Cir. 1994).

## VIII.  The Rule Of Lenity

When dealing with criminal statutes, and the question of whether one is facially unconstitutional, the court must succumb to the Rule of Lenity, a fundamental legal principle which provides that ambiguous criminal statutes be construed in favor of the accused. *Staples v. United States*, 511 U.S. 600, 619 n. 1, 128 L.Ed.2d 608, 114 S.Ct. 1793 (1994); *Common-Law Courts in a Civil Law System*, at 29, in *A Matter of Interpretation:  Federal Courts and the Law* (A. Scalia, Ed., 1997) ("The Rule of Lenity is almost as old as the Common law itself…").

There are two canons of statutory construction – the Rule of Lenity and the rule that an ambiguous statute should be interpreted where possible to avoid "grave and doubtful constitutional questions." *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 53 L.Ed. 836, 29 S.Ct. 527 (1909). The Rule of Lenity requires ambiguous criminal statutes to be construed in favor of the Defendant. This applies both to the scope of the conduct covered by the statute as well as to the extent of the penalties imposed. *Bifulco v. United States*, 447 U.S. 381, 387, 65 L.Ed.2d 205, 100 S.Ct. 2247 (1980); *United States v. Jones*, 529 U.S. 848, 146 L.Ed.2d 902, 120 S.Ct. 1904 (2000).

Just as in the Rule of Lenity cases, we are faced with an ambiguous statute. See *Smith v. United States*, 508 U.S. 223, 124 L.Ed.2d 138, 113 S.Ct. 2050 (1993) (Rule of Lenity "is reserved for cases where, [a]fter seiz[ing] everything from which aid can be derived, the court is left with an ambiguous statute.") (quoting *United States v. Bass*, 404 U.S. 336, 347, 30 L.Ed.2d 488, 92 S.Ct. 515 (1971) (in turn quoting *United States v. Fisher*, 6 U.S., 2 L.Ed. 304, 2 Cranch 358, 386 (1805))).

In the Instant Case, the Rule of Lenity operates to enforce the principles of Due Process: In any situation where a person stands convicted of an unconstitutional statute, that conviction *must* be vacated. Therefore, relief in the Instant Case is clearly supported.

## IX. Relief Sought

The Petitioner is asserting a most serious constitutional claim. The Fifth Amendment, Fourteenth Amendment and Article III, §2 of the Constitution might well be abused if no avenue is opened for review by the courts of that claim. See *Draft Reclassifications for Political Demonstrators -- Jurisdictional Amounts in Suits Against federal Officers*, 53 Corn. L.Q. 916, 926-929 (1968). "Where federally protected rights have been invaded ... courts will be alert to adjust their remedies so as to grant the necessary relief." *Bell, supra.*

In the Instant Case, the Petitioner is seeking declatory relief. The express purpose of the Federal Declatory Judgment Act was to provide a milder alternative to the injunction remedy. Indeed, early in the history of the Act, the Supreme Court applied it to test the constitutionality of a federal statute carrying criminal sanctions. See *Currin v. Wallace*, 306 U.S. 1, 83 L.Ed. 441, 59 S.Ct. 379 (1939).

Professor E. Borchard, a leading proponent of the Act, said, "The declaratory judgment serves another useful purpose. It often happens that courts are unwilling to grant injunctions to restrain the enforcement of penal statutes or ordinances, and relegate the plaintiff to his option, either to violate the statute and take his chances in testing constitutionality on a criminal prosecution, or else to forego, in the fear of prosecution, the exercise of his claimed rights. Into this dilemma no civilized legal system operating under a constitution should force any person. The court, in effect, by refusing an injunction informs the prospective victim that the only way to determine whether the suspect is a mushroom or a toadstool, is to eat it. Assuming that the plaintiff has a vital interest in the enforcement of the challenged statute or ordinance, there is no reason why a declaratory judgment should not be issued, instead of compelling a violation of the statute as a condition precedent to challenging its constitutionality." *Hearings on H.R. 5623*, 70th Cong., 1st Sess., 19 at 75-76 (1928).

Additionally, a court may not assess the constitutionality of a statute in a purely hypothetical case. The Petitioner can imagine no situation in which a law, unconstitutional on its face, may be saved by a showing that Law Enforcement Officers had in several instances enforced the law in a constitutional manner. The Petitioner's situation is not hypothetical, but is a very real and significant case with a significant constitutional deficiency in the statutes in question. Furthermore, the court must defer to the Petitioner's view so long as it is a reasonable interpretation of an ambiguous statute. See *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43, 81 L.Ed.2d 694, 104 S.Ct. 2778 (1984). The Petitioner avers that his position is reasonable.

# X. <u>Conclusion</u>

**WHEREFORE:** For all the foregoing reasons and authorities, the Petitioner, David I. Altman, PRO SE, respectfully Moves this Honorable Court for an Order **GRANTING** declatory relief in the Instant Matter, declaring the Petitioner's conviction to be **VACATED**, and his criminal record **EXPUNGED**.

Respectfully Submitted,

David I. Altman
Reg. No. 55477-004  Durham-B
Low Security Correctional Institution
P.O. Box 999
Butner, NC 27509-0999

20